## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CLASS ACTION

EVAN BERGER                                        Case No.  26-cv-20095

      Plaintiff,

v.

STEVEN HIROYUKI AOKI
and MATTHEW KALISH

      Defendant.

_____

### COMPLAINT FOR DAMAGES

Plaintiff, Evan Berger ("Berger" or "Plaintiff") sues Defendants Steven Hiroyuki Aoki ("Aoki") and Matthew Kalish ("Kalish") (collectively "Defendants") and alleges:

### INTRODUCTION

1. With millions of users across the United States, in the last decade, social media became the place to be. Due to mostly unregulated activity, it quickly grabbed the attention of those perpetrating "get rich quick" scams and other illegal behavior.

2. Non-party Metazoo Games LLC ("Metazoo") was founded in 2020.  Metazoo initially created a tabletop collectible card game based on folklore.

3. Although the company initially began as a collectible trading card game, it quickly expanded to other products such as skateboards, apparel, and non-fungible tokens ("NFTs").

4. By its peak, Metazoo had sold its products to tens if not hundreds of thousands of individuals, held nationwide competitions, exhibited at dozens of trading card expos and comic con conventions, and was endorsed by celebrities.

Case No.  26-cv-20095

5.      In part, the rise of Metazoo was the result of extensive promotion by Defendant Aoki, a nationally recognized DJ and record producer with over 11 million followers on Instagram as well as Defendant Kalish, a nationally recognized individual who co-founded DraftKings, a publicly traded company with a current market cap of over $17 billion.

6.      As it relates to Defendant Aoki, for many years he advertised and endorsed Metazoo products on social media while failing to disclose that he was an owner of the company.

7.      Additionally, as it relates to Metazoo created non-fungible tokens in the shape of coins (the "Metazoo Coin NFT's"), Defendants Aoki an Kalish advertised them on social media in order to build hype, increase their price, and create profits for Metazoo through automatic commissions on secondary market sales.  At one point, a set of all 10 versions of the Metazoo Coin NFTs had a value of 20 Ethereum - approximately $80,000.

8.      This action is arising from the deceptive, unfair and misleading promotion by Defendants of products sold by Metazoo in Florida and throughout the United States.

9.      This is a nationwide class action seeking monetary damages and restitution from the influencer and celebrity Defendants.

10.      During the Class Period (defined below), the Aoki and Kalish misrepresented the material connection they had with Metazoo by endorsing Metazoo without disclosing the fact that they were compensated for doing it, a practice that is highly unfair and deceptive.

11.      Relying on the undisclosed endorsements and misleading advertising, Plaintiff and the Class Members (defined below) purchased products from Metazoo while the Metazoo products proved to be of a lower value than the price paid. Additionally some Class Members held onto the Metazoo Coin NFTs believing that they would increase in value based upon the undisclosed endorsements and misleading advertising.

EVAN BERGER LAW, P.A.
4800 North Federal Highway • Suite B200 • Boca Raton, Florida 33431
TELEPHONE (954) 380-4343

Case No.  26-cv-20095

12.     The difference in price can be attributed exclusively to the undisclosed endorsements.

13.     Prior to its bankruptcy, Metazoo products were sold predominately online and many, if not all, of Metazoo's customers during the Class Period were exposed to social media posts containing the undisclosed advertising.

14.     In order to artificially inflate the prices for the Metazoo products; Metazoo, Aoki, and Kalish devised a scheme in which they would will endorse Metazoo products by tagging or recommending such products sold on Metazoo's website or through various NFT marketplaces, pretending they are disinterested consumers.

## JURISDICTION AND VENUE

15.     Evan Berger is a Florida citizen.  At all material times related to the Complaint, Berger was a citizen of Miami-Dade County, Florida.  Berger is currently a citizen of Palm Beach County, Florida.

16.     Aoki is a citizen of Nevada.  Aoki is and was transacting business in Florida and nationwide over the internet and actively soliciting business within Florida.

17.     Kalish is a citizen of Massachusetts.  Kalish is and was transacting business in Florida and nationwide over the internet and actively soliciting business within Florida.

18.     The Court has jurisdiction over Defendants because the social media communications, described further below, targeted Florida citizens such as Berger.

19.     For instance, NFT's recorded over $17 billion in sales for the year 2021.  During the same time period, according to Google analytics, Florida ranked 4th in the United States for the search term "NFT".

20.     By virtue of this, Defendants Aoki and Kalish, two individuals who are extremely

EVAN BERGER LAW, P.A.
4800 North Federal Highway • Suite B200 • Boca Raton, Florida 33431
TELEPHONE (954) 380-4343

well established in the NFT space, knew or should have known that their NFT related posts were directed to Florida citizens.

21.     This is a national class action, including every purchaser of Metazoo products in the United States.

22.     Prior to bankruptcy, Metazoo had tens of millions of dollars in revenue, a good portion of which can be directly attributed to the undisclosed endorsements on social media by Defendants.

23.     As a result, the estimated damages in this case are likely in the tens of millions.

24.     The National Class is comprised of tens of thousands of people who purchased Metazoo products during the Class Period.

25.     This Court has jurisdiction over this matter under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because this is a proposed class action in which: 1) there are at least 100 class members; 2) the combined claims of Class Members exceed $5,000,000, exclusive of interest, attorneys' fees, and costs; and 3) Defendants and Class Members are citizens of different states.

26.     The Court also has jurisdiction pursuant to 28 U.S.C. § 1367 over the Plaintiffs' related state law claims.

27.     Venue is proper under 28 U.S.C. §1391(b) because Berger is a citizen of the judicial district that comprises the Southern District of Florida and a substantial part of the events giving rise to the claim occurred in that judicial district.

## STATEMENT OF FACTS

28.     Social media emerged as a main source of information and communication[1] for

---

[1] Fink, T., 2021. Drivers of User Engagement in Influencer Branding. [S.l.]: Springer Fachmedien Wiesbaden, p.2.

EVAN BERGER LAW, P.A.
4800 North Federal Highway • Suite B200 • Boca Raton, Florida 33431
TELEPHONE (954) 380-4343

Case No.  26-cv-20095

billions of users.

29.     There were an estimated 159 million Instagram users in the United States in 2022[2], while in 2021 the platform engaged over 2 billion monthly users[3].

30.      In 2025, with over 178.2 million monthly active users, Facebook (part of Meta) continues to dominate the US social media landscape. However, it faces strong competition from another Meta platform, Instagram (143.2 million in the United States) and TikTok (112.4 million users).

31.     In the last ten years, social media has become one of the most popular ways to influence consumer behavior online.

32.     For example, since 2017, Instagram has grown tremendously, adding 100 million users every few months[4].

33.     Around seven-in-ten Americans ages 18 to 29 (71%) say they use Instagram.[5]

34.     Researchers found that social media influencer endorsement tend to be more effective than traditional celebrity endorsements by being more cost-effective, generating higher user engagement, and capitalizing on the power and influence of social media influencers over consumers.[6]

35.     Some 80% of social media users said they were concerned about advertisers and

---

[2]  Statista. 2021. Leading countries based on Instagram audience size as of October 2021: http://www.statista.com/statistics/578364/countries-with-most-instagram-users/ (last visited Oct 28, 2022).
[3]  Rodriguez, S., 2021. Instagram surpasses 2 billion monthly users while powering through a year of turmoil, https://www.cnbc.com/2021/12/14/instagram-surpasses-2-billion-monthly-users.html (last visited Oct 28, 2022).
[4]  Farhad Manjoo, Why Instagram Is Becoming Facebook's Next Facebook The New York Times, April 26, 2017, https://www.nytimes.com/2017/04/26/technology/why-instagram-is-becoming-facebooks-nextfacebook.html     (last visited Oct 28, 2022)
[5]  Schaeffer, K., 2022. 7 Facts About Americans and Instagram. Pew Research Center. https://pewrsr.ch/3FqryHE (last visited Feb 11, 2022).
[6]  Shengnan Ren, Sahar Karimi, Alberto Bravo Velázquez, Jianfeng Cai, 2023. Endorsement effectiveness of different social media influencers: The moderating effect of brand competence and warmth, Journal of Business Research, Volume 156.

EVAN BERGER LAW, P.A.
4800 North Federal Highway • Suite B200 • Boca Raton, Florida 33431
TELEPHONE (954) 380-4343

businesses accessing the data they share on social media platforms, and 64% said the government should do more to regulate advertisers[7].

36.     This is because some unscrupulous "influencers" are acting as advertisers for hire, making it a habit of posting fake reviews for sponsored products or failing to disclose the fact that they were paid to use specific products in the content they create and display on their profile. As such, they are endorsing products without disclosing the material connections with the advertiser.  More than often, these "influencers" would advertise everything from alcohol to cannabinoids, from political ideas to illegal giveaways, as long as they are paid the high prices, the luxurious merchandise and expensive trips they are demanding.

37.     It is undisputed that endorsements (especially the undisclosed ones) increase sales for the brand in a "cost-effective" manner as it is more likely the consumer buy products that were referred to them, than products that were advertised to them.

38.     Metazoo recognized that the influencers generated "consumer appeal and credibility" for its owned brands and for the Metazoo products in general.

39.     Plaintiff and Class Members purchased the Metazoo products at inflated prices, exclusively because of the way the Metazoo products are advertised on social media and the misleading content of the advertisement.

40.     Berger purchased items from Metazoo during the Class Period as a result of the products being endorsed by Aoki and Kalish.

41.     Further, Berger, who successfully traded NFTs in 2021 and 2022, decided to retain 26 Metazoo Coin NFTs that he otherwise would have sold due to a series of Instagram

---

[7] Raine, L., 2022. Americans' complicated feelings about social media in an era of privacy concerns. http://www.pewresearch.org/fact-tank/2018/03/27/americans-complicated-feelings-about-social-media-inan-era-of-privacy-concerns/ (last visited Feb. 15, 2022).

EVAN BERGER LAW, P.A.
4800 North Federal Highway • Suite B200 • Boca Raton, Florida 33431
TELEPHONE (954) 380-4343

Case No.  26-cv-20095

posts by Aoki and Kalish.

42.    At the time, Berger's Metazoo Coin NFT collection which included at least 26 Metazoo NFTs was valued north of $150,000.  Today they are worthless.

## THE INFLUENCERS

43.    The rapid growth of social media platforms, including Instagram, allowed for lack of regulation and oversight.

44.    Given the enormous reach of the social media platforms, and in an effort to curb online behavior that ignores the law and uses the lack of enforcement as an excuse for violating laws across jurisdictions, the FTC has published on numerous occasions guidelines for influencers regarding proper advertising practices[8], interpreting the FTC Act.

45.    Despite being compensated for endorsing Metazoo, Aoki and Kalish failed to use the "paid partnership" label suggested by the FTC and Meta (parent company of Instagram).

46.    Therefore, Aoki and Kalish failed to be compliant with the FTC Act as interpreted by the FTC found in 16 C.F.R. § 255.5 and the FTC guidelines regarding advertising on social media.

47.    Plaintiff is and was "following" Aoki on social media.

48.    Plaintiff's decision to purchase Metazoo products at a premium as well as retain the Metazoo Coin NFTs was determined by the influencers he followed, specifically by the Defendants in this case and the fact that they endorsed Metazoo products.

49.    Plaintiff would not have purchased or retained the Metazoo products if he knew that Aoki and Kalish were compensated to endorse Metazoo.

---

[8] Federal Trade Commission. 2019. Disclosures 101 for Social Media Influencers. Available at: https://www.ftc.gov/system/files/documents/plain-language/1001a-influencer-guide-508_1.pdf (last visited Oct 28, 2022).

EVAN BERGER LAW, P.A.
4800 North Federal Highway • Suite B200 • Boca Raton, Florida 33431
TELEPHONE (954) 380-4343

50.     Aoki and Kalish were paid for their endorsements, and their claims concerning the Metazoo products were unfair and misleading.

## THE ADVERTISING

51.     Meta, the parent company of Instagram, offers various products that advertisers can use for commercial use.  For example, an advertiser may promote content using a boosted post or an Instagram ad for a price paid directly to Meta. Both the post and the ad are created by the advertiser that wants to promote a certain message, service, or product.  They are clearly marked as advertising by Instagram.

52.     The same advertisers can also promote content by directly paying influencers to create a collaboration post.  Influencers can also be paid for ads to be posted on the influencer's account, as part of the grid (the pictures and videos displayed for a user when accessing or refreshing an account) or as part of stories (short videos that only show for a limited amount of time and, usually, can only be viewed once). Such collaboration is usually properly disclosed.

53.     Another way Instagram allows advertisers to use the platform is by sponsoring independent content generated by the influencers themselves.  In this case the influencer should take advantage of the "paid partnership" label offered by Instagram to show that influencer is being compensated to generate this content.  A "paid partnership" label is also a step in maintaining compliance with the Federal Trade Commission's ("FTC") rules and guidelines and the FTC interpretation of the FTC Act.

54.     Since, at times, Instagram algorithms may spot and remove posts where the "paid partnership" tag is not present, Defendants went to great lengths to hide the nature of their partnership.

55.     Every time an influencer advertises and endorses a product, such advertisement

Case No.  26-cv-20095

may appear in the Instagram feed of the Instagram users following the influencer.  Also, at times, Instagram will "suggest" the post to users that are not following the influencer but have similar interests.

56.     Defendants were endorsing Metazoo products in their posts by tagging @metazoo_games.

57.     An "endorsement" is any "advertising message (including verbal statements, demonstrations, or depictions of the name, signature, likeness or other identifying personal characteristics of an individual or the name or seal of an organization) that consumers are likely to believe reflects the opinions, beliefs, findings, or experiences of a party other than the sponsoring advertiser.  The party whose opinions, beliefs, findings, or experience the message appears to reflect will be called the endorser and may be an individual, group, or institution." 16 C.F.R. § 255.0(b)

58.     The FTC has repeatedly made public guidelines for influencers regarding proper advertising practices, publishing a plain language interpretation of the FTC Act.

59.     As interpreted by the FTC, "[c]ompanies that use deceptive endorsements and reviews inflict an injurious double whammy.  They harm consumers with misleading tactics that subvert their choices at check-out.  And they take business away from honest competitors that work hard to comply with the law."[9]

60.     By endorsing Metazoo products without regard to the disclosure requirements, the Defendants are in violation of 15 U.S.C. § 45(a) and, as such, their actions are in violation of the "little FTC Acts" enacted in Florida as well as California, Colorado, Connecticut, Delaware,

---

[9] Ritchie, J.N.& A. et al. (2023) FTC and endorsements: Final revised guides, a proposed new rule, and an updated staff publication, FTC.gov. Available at: https://www.ftc.gov/business-guidance/blog/2023/06/ftcendorsements-final-revised-guides-proposed-new-rule-updated-staff-publication (Accessed: 07 September 2023).

EVAN BERGER LAW, P.A.
4800 North Federal Highway • Suite B200 • Boca Raton, Florida 33431
TELEPHONE (954) 380-4343

Case No.  26-cv-20095

District of Columbia, Hawaii, Idaho, Illinois, Iowa, Kansas, Louisianna, Michigan, Minnesota, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, Oklahoma, South Carolina, Tennessee, Vermont, Washington, and Wisconsin.

### THE UNDISCLOSED ADVERTISING

61.     While the practice employed by Aoki, Kalish, and Metazoo was very profitable (and "cost-effective"), it is, nevertheless, illegal.

62.     Federal law, Florida law, and the law of many other states, all prohibit such commercial behavior.

63.     Plaintiff saw Metazoo products being used by Aoki and Kalish which led to him purchasing items on the Metazoo website, which proved to not provide value for the inflated price paid for the items.

64.     Berger also held the NFT's being endorsed by Aoki and Kalish due to their undisclosed advertisements and statements that the property would increase in value.  Those NFTs are now worthless.

65.     Some examples of social media posts by Defendant Aoki are as follows:

EVAN BERGER LAW, P.A.
4800 North Federal Highway • Suite B200 • Boca Raton, Florida 33431
TELEPHONE (954) 380-4343

Case No.  26-cv-20095



EVAN BERGER LAW, P.A.
4800 North Federal Highway • Suite B200 • Boca Raton, Florida 33431
TELEPHONE (954) 380-4343

Case No.  26-cv-20095



EVAN BERGER LAW, P.A.
4800 North Federal Highway • Suite B200 • Boca Raton, Florida 33431
TELEPHONE (954) 380-4343

Case No.  26-cv-20095



EVAN BERGER LAW, P.A.
4800 North Federal Highway • Suite B200 • Boca Raton, Florida 33431
TELEPHONE (954) 380-4343

Case No.  26-cv-20095



EVAN BERGER LAW, P.A.
4800 North Federal Highway • Suite B200 • Boca Raton, Florida 33431
TELEPHONE (954) 380-4343

Case No.  26-cv-20095



EVAN BERGER LAW, P.A.
4800 North Federal Highway • Suite B200 • Boca Raton, Florida 33431
TELEPHONE (954) 380-4343

Case No.  26-cv-20095



66.     Aside from these posts, Aoki held a poker game at his home in which he as well as Kalish and other celebrities and influencers discussed the benefit of the Metazoo coin NFT's. During the poker game - which was broadcast on Aoki's Instagram as well as that of Kalish - Aoki, Kalish, and other discussed gambling with the Metazoo NFT's and that they would not want to risk anything so valuable.  The reason was that they were going up in value and that they would continue to increase in value.  Defendants further discussed the increasing value of the items and that the value of them would go "to the moon", a common parlance related to NFTs increasing exponentially in value.

67.     A still screenshot of the poker game can be seen here:

EVAN BERGER LAW, P.A.
4800 North Federal Highway • Suite B200 • Boca Raton, Florida 33431
TELEPHONE (954) 380-4343

Case No.  26-cv-20095



68.     Shortly after the "poker game" skit by Defendants, Metazoo transferred approximately 90 Ethereum to Aoki and Kalish received by or on behalf of Metazoo approximately 90 Ethereum over the course of two transactions.

69.     By looking at the social media posts, Plaintiff was unable to discern the fact that those posts were paid posts, rather than organic, honest endorsements by Defendants.

EVAN BERGER LAW, P.A.
4800 North Federal Highway • Suite B200 • Boca Raton, Florida 33431
TELEPHONE (954) 380-4343

Case No.  26-cv-20095

70.    But for Defendants endorsement and the misleading advertising claims, Plaintiff and the Class Members would not have purchased the Metazoo products at the price they paid or purchased/retained the Metazoo NFTs believing that they would increase in value.

71.    In deciding to purchase Metazoo products, Plaintiff and Class Members followed what they believed to be the honest advice of Defendants.

72.    Even though the tokens were only available on the secondary market, Metazoo received a substantial fee for each secondary market sale of the NFTs.

73.    None of the posts Plaintiff saw mentioned, as required, that the Defendants are nothing more than paid advertisers for the brand.

## CLASS ALLEGATIONS

74.    Plaintiff incorporates by reference all previous paragraphs of this Complaint as if fully re-written herein.

75.    Plaintiff asserts the counts stated herein as class action claims pursuant to Fed. R. Civ. P. 23.

76.    Plaintiff is filing this lawsuit on behalf of all persons that purchased Metazoo products or retained a Metazoo NFT from January 8, 2022, to present (the "Class Period").

77.    Plaintiff Berger is a citizen of Florida and seeks to represent six classes composed of and defined as follows:

a. Nationwide Class: All United States residents that purchased products from Metazoo during the class period.

b. Florida Subclass: All Florida residents that purchased products from Metazoo during the class period.

c. Multi-State Subclass: All residents of the following states that purchased products from

EVAN BERGER LAW, P.A.
4800 North Federal Highway • Suite B200 • Boca Raton, Florida 33431
TELEPHONE (954) 380-4343

Metazoo during the class period: California, Colorado, Connecticut, Delaware, District of Columbia, Hawaii, Idaho, Illinois, Iowa, Kansas, Louisianna, Michigan, Minnesota, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, Oklahoma, South Carolina, Tennessee, Vermont, Washington, and Wisconsin. The consumer protection statutes of these states are materially identical with Florida's statutes. The respective statutes are: COLO. REV. STAT. § 6-1-102; CONN. GEN. STAT. § 42-110a; DEL. CODE ANN. tit. 6, § 2511; D.C. CODE ANN. § 28-3901; HAW. REV. STAT. § 480-1; IDAHO CODE § 48-603; 815 ILL. COMP. STAT. 510/1 (2024); IOWA CODE § 714.16; KAN. STAT. ANN. § 50-623 (2024); LA. STAT. ANN. § 51:1401 (2024); MICH. COMP. LAWS § 445.903; MINN. STAT. § 325F.69; MONT. CODE ANN. § 30-14-101; NEB. REV. STAT. § 59-1601 (2024); NEV. REV. STAT. ANN. § 598.0903 (2024); N.H. REV. STAT. ANN. § 358-A:2 (2024); N.J. REV. STAT. § 56:8-2 (2024); N.M. STAT. ANN. § 57-12-2 (2024); N.Y. GEN. BUS. LAW § 349 (2024); OKLA. STAT. tit. 15, § 751 (2024); S.C. CODE ANN. § 39-5-10; TENN. CODE ANN. § 47-18-104 (2024); VT. STAT. ANN. tit. 9, § 2453 (2024); WASH. REV. CODE § 19.86.010 (2024); WIS. STAT. § 100.18 (2024).

d. Nationwide Coin NFT Class: All United States residents that purchased or retained Metazoo Coin NFT's during the class period.

e. Florida Coin NFT Subclass: All Florida residents that purchased or retained Metazoo Coin NFT's during the class period.

f. Multi-State Coin NFT Subclass: All residents of the following states that purchased purchased or retained Metazoo Coin NFT's during the class period: California, Colorado, Connecticut, Delaware, District of Columbia, Hawaii, Idaho, Illinois, Iowa, Kansas,

EVAN BERGER LAW, P.A.
4800 North Federal Highway • Suite B200 • Boca Raton, Florida 33431
TELEPHONE (954) 380-4343

Louisianna, Michigan, Minnesota, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, Oklahoma, South Carolina, Tennessee, Vermont, Washington, and Wisconsin. The consumer protection statutes of these states are materially identical with Florida's statutes as described above.

78.     Collectively the members of the Nationwide Class and all Subclasses shall be referred to as "Class Members".

79.     The classes exclude counsel representing the class[10], governmental entities, Defendants, any entity in which Defendants have a controlling interest, Defendant's officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns, any judicial officer presiding over this matter, the members of their immediate families and judicial staff, and any individual whose interests are antagonistic to other putative class members.

80.     Plaintiff reserves the right to amend or modify the class descriptions with greater particularity or further division into subclasses or limitation of particular issues.

81.     This action has been brought and may properly be maintained as a class action under Federal Rule of Civil Procedure 23 ("Rule 23") because it is a well-defined community of interest in the litigation and the class is readily and easily ascertainable.

82.     Numerosity: Tens of thousands of consumers have been injured by Defendants' deceptive marketing practices, including Plaintiff.

83.     Typicality: Plaintiff's story and his claims are typical for the class and, as the named Plaintiff, he is aware of other persons in the same situation. Plaintiff and the members of each class sustained damages arising out of Defendants' illegal course of business.

---

[10] The undersigned will substitute with a different lawfirm prior to seeking class certification.

EVAN BERGER LAW, P.A.
4800 North Federal Highway • Suite B200 • Boca Raton, Florida 33431
TELEPHONE (954) 380-4343

Case No.  26-cv-20095

84.     Commonality: Since the whole class purchased products from Metazoo or retained Metazoo Coin NFTs, and such products are promoted in the same manner by Defendants, the questions of law and fact are common to the class.

85.     Adequacy: Berger will fairly and adequately protect the interests of each class he represents.

86.     Superiority: As questions of law and fact that are common to class members predominate over any questions affecting only individual members, a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

87.     Plaintiff will fairly and adequately represent and protect the interests of the class. Counsel for Plaintiff and the putative class are experienced and competent in litigating class actions.

**VIOLATIONS OF 15 U.S.C. § 45(a)**
**(not pled as an independent cause of action)**

88.     By failing to disclose their material connection with Metazoo, Aoki and Kalish are in violation of 15 U.S.C. § 45(a).

89.     The FTC interprets 15 U.S.C. § 45(a) stating that any material connection should be "clearly and consciously disclosed," and that failure to disclose material connections could subject both the influencers and the advertisers to civil penalties[11].

90.      The violations of the 15 U.S.C. § 45(a) are not pled as an independent cause of action, but as an element of one or more of the causes of action detailed in this Complaint.

---

[11]  https://www.ftc.gov/system/files/attachments/penalty-offenses-concerning-endorsements/npo_endorsement_template_letter.pdf (last visited June 25, 2024)

EVAN BERGER LAW, P.A.
4800 North Federal Highway • Suite B200 • Boca Raton, Florida 33431
TELEPHONE (954) 380-4343

## CAUSES OF ACTION

### COUNT I: VIOLATIONS OF FLORIDA DECEPTIVE AND
### UNFAIR TRADE PRACTICES ACT (FDUTPA)
(On behalf of Plaintiff Negreanu and Florida Subclass)

91.     Plaintiff incorporates by reference paragraphs 1-90 of this Complaint as if fully stated herein.

92.     Berger asserts this count on his own behalf and on behalf of the Florida Subclass, as defined above, pursuant to Fed. R. Civ. P. 23.

93.     Defendants provided Instagram users with the means and instrumentalities for the commission of deceptive acts and practices and engaged in a deceptive act or unfair practice, by engaging in misrepresentation, and statutory violations.

94.     For a fee, Defendants, with the means and instrumentalities for the commission of deceptive acts and practices, engaged in deceptive acts or unfair practices, by engaging in misrepresentation and statutory violations.

95.     As discussed *supra*, by failing to disclose material connections, Defendants violated 15 U.S.C. § 45(a) ("FTC Act") as interpreted by the FTC and the courts, which represents a violation of "FDUTPA".

96.     The FTC clarifies its interpretation of the FTC Act is as follows: "if there's a connection between an endorser and the marketer that a significant minority of consumers wouldn't expect and it would affect how they evaluate the endorsement, that connection should be disclosed clearly and conspicuously."[12]

97.     FDUTPA recognizes that "due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and […] relating to s. 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C. s. 45(a)(1)." § 501.204 Fla. Stat.

---

[12] See https://www.ftc.gov/business-guidance/resources/ftcs-endorsement-guides-what-people-are-asking

Case No.  26-cv-20095

98.     As interpreted by the FTC, failure to disclose material connections represents a violation of FDUTPA.

99.     Such practices as the ones employed by the Defendants are illegal, unethical, unscrupulous, and likely to mislead any consumer acting reasonably in the circumstances, to the class members' detriment.

100.    Defendants' engagement in these unfair practices caused the Plaintiffs to suffer a loss.

101.    The value of the loss should be calculated as the price paid for a product purchased from Metazoo less the market value of the product (without the infringing endorsements) and it is in excess of $5,000,000 for the Florida Subclass.

102.    The value of the loss as it relates to the Metazoo Coin NFT's is the value of the NFT tokens at the time of the endorsement less the market value of the product.

103.    Berger is aggrieved by the fact that he purchased overpriced merchandise as a direct result of the failure to disclose material connections by Defendants and has been damaged.

## COUNT II: VIOLATIONS OF CONSUMER PROTECTION LAWS OF VARIOUS STATES
(On behalf of Plaintiff Berger and the Multi-State Class)

104.    Plaintiff incorporates by reference paragraphs 1-90 of this Complaint as if fully stated herein.

105.    Plaintiff asserts this count on his own behalf and on behalf of the Multi-State Subclass as defined in Paragraph 81 *supra*.

106.    As discussed supra, by failing to disclose material connections, Defendants violated 15 U.S.C. § 45(a) ("FTC Act") as interpreted by the FTC and the courts, which represents a violation of the little FTC Acts of the states included in the Multi-State Class.

Case No.  26-cv-20095

107.    The consumer protection statutes enacted in the states included in the Multi-State Class are materially identical to FDUTPA.

108.    As such, the members of the Multi-State Class are entitled to damages as calculated by each consumer protection statute in the state where they reside.

## COUNT III: UNJUST ENRICHMENT
(On behalf of Plaintiff Berger and the Florida and Nationwide Subclasses)

109.    Plaintiff incorporates by reference paragraphs 1-90 of this Complaint as if fully stated herein.

110.    As set forth above, Plaintiff asserts this count on his own behalf and on behalf of all other similarly situated social media users.

111.    By paying the high prices demanded by Metazoo, Plaintiff and Class Members conferred a direct benefit to Defendants.

112.    By not purchasing or retaining the Metazoo Coin NFTs, Plaintiff and Class Members conferred a direct benefit to Defendants.

113.    Social media users that are members of the class suffered injuries as a result of the Defendants' behavior. If the Defendants do not compensate the Plaintiff, they will be unjustly enriched as a result of their unlawful act or practices.

114.    Under Florida law and the law of the states where the Multi-State Defendants reside, it is an equitable principle that no one should be allowed to profit from his own wrong, therefore it would be inequitable for the Defendants to retain said benefit, and reap unjust enrichment.

115.    Due to Defendants' conduct, Plaintiff, the Florida Subclass, and the Multi-State Subclass are entitled to damages.

EVAN BERGER LAW, P.A.
4800 North Federal Highway • Suite B200 • Boca Raton, Florida 33431
TELEPHONE (954) 380-4343

Case No.  26-cv-20095

## COUNT IV: NEGLIGENT MISREPRESENTATION
### (On behalf of Plaintiff Berger and the Florida and Nationwide Subclasses)

116.     Plaintiff incorporates by reference paragraphs 1-90 of this Complaint as if fully stated herein.  As set forth above, Plaintiff asserts this count on his own behalf and on behalf of all other similarly situated persons pursuant to Rule 23.

117.     Defendants had a duty to be truthful in their commercial speech.  In convincing the Plaintiff to purchase products sold by Metazoo and to retain the Metazoo Coin NFT's, Defendants made representations that they knew to be false or negligently failed to examine the veracity of the affirmations.

118.     As a result of the Defendants' negligent misrepresentations, Plaintiff and the Nationwide Class Members suffered injury.

## DEMAND FOR JURY TRIAL

119.     Plaintiff and those similarly situated Class Members demand a trial by jury for all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Evan Berger, respectfully request that judgment be entered in his favor and in favor of the Class Members as follows:

a. Certifying and maintaining this action as a class action, with the named Plaintiff as designated class representative and with his chosen counsel appointed as class counsel;

b. Declaring the Defendants in violation of each of the counts set forth above;

c. Awarding the Plaintiff and those similarly situated compensatory, punitive, and treble damages in excess of $5,000,000;

d. Awarding the Plaintiff and those similarly situated liquidated damages;

EVAN BERGER LAW, P.A.
4800 North Federal Highway • Suite B200 • Boca Raton, Florida 33431
TELEPHONE (954) 380-4343

Case No.  26-cv-20095

e. Ordering the disgorgement of ill-gotten monies;

f. Awarding the named Plaintiff a service award;

g. Awarding pre-judgment, post-judgment, and statutory interest;

h. Awarding attorneys' fees and costs pursuant to Fla. Stat. § 501.2105 and the various

prevailing party fees provisions of the related statutes of the Multi-State Defendants; and

i.  such other relief as the Court deems just and proper.

Dated: January 7, 2026

Respectfully submitted
BERGER LAW
*Attorneys for Plaintiff*
4800 North Federal Highway, Suite B200
Boca Raton, Florida 33431
Telephone:  (954) 380-4343
Evan@bergerlawpa.com

By:_____
EVAN B. BERGER
Florida Bar No.  71479

EVAN BERGER LAW, P.A.
4800 North Federal Highway • Suite B200 • Boca Raton, Florida 33431
TELEPHONE (954) 380-4343